## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JACQUELYN THOMAS              :
LUNGSTRUM,                    :
                             :
    **Plaintiff,**       :
                             :   **CIVIL ACTION FILE**
**v.**                        :   **NO. 1:14-cv-02828-WSD-AJB**
                             :
CAROLYN W. COLVIN,            :
*Acting Commissioner of Social* :
*Security,*                   :
                             :
    **Defendant.**      :

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Plaintiff Jacquelyn Thomas Lungstrum ("Plaintiff") brings this action pursuant

to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial

review of the final decision of the Commissioner of the Social Security Administration

("the Commissioner") denying her application for Disability Insurance Benefits

("DIB") under the Social Security Act.[1]   The action was referred to the undersigned for

---

[1]      Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled.   Title XVI claims are not tied to the attainment of a particular period of insurance disability.   *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability

a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b), N.D. Ga. R. 72.1, and Standing Order 14-01 (N.D. Ga. Aug. 15, 2014). For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 13, 2010, alleging disability commencing on November 4, 2010. [Record (hereinafter "R") 25]. After Plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on January 9, 2013. [R25]. The ALJ issued a decision on February 4, 2013, denying Plaintiff's application on the ground that she had not been under a "disability" from November 4, 2010, through the date of the decision. [R25-35]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review

---

under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)). In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

2

on July 2, 2014, making the ALJ's decision the final decision of the Commissioner. [R5-7].

Plaintiff then filed an action in this Court on September 2, 2014, seeking review of the Commissioner's decision. [*See* Doc. 1]. The answer and transcript were filed on January 12, 2015. [*See* Docs. 4, 5]. On February 12, 2015, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 8]; on March 16, 2015, the Commissioner filed a response in support of the decision, [Doc. 9]. Plaintiff did not file a reply brief. [*See* Dkt.]. No motion for oral argument was filed. [*Id.*]. The matter, now before the Court upon the administrative record and the parties' pleadings and briefs, is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

## II.   STATEMENT OF FACTS[2]

### A.   Background

Plaintiff was 60 years old at the time of the ALJ's decision. [R35, 48, 58]. She has an Associate's degree following receipt of a GED for high school, [R51], and has attended software classes, [R52], and past relevant work as a systems programmer and

---

[2]      The records referenced in this section are those deemed by this Court and the parties to be relevant to this appeal. [*See* Docs. 8, 9].

programmer analyst.  [R66].  Plaintiff filed for DIB alleging disability due to diabetes, COPD, emphysema, depression, severe joint pain, and arthritis.  [R160].

**B.**  **Medical Records**

**1.**  **Pinnacle Orthopedics**

Plaintiff began treatment at Pinnacle Orthopedics on October 2, 2008 for neck and shoulder pain.  [R594].  On October 20, 2008, Yong S. Lee, M.D., gave Plaintiff a cervical epidural steroid injection to relieve neck pain and right arm pain.  [R544]. Plaintiff had been diagnosed with stress urinary incontinence and underwent a cystoscopy on March 31, 2009. [R523].  In May 2009, Plaintiff began physical therapy for pain in her neck and mid-back.  [R591].  Plaintiff reported that her symptoms were relieved by medication and sitting, however, prolonged standing, prolonged sitting, and lifting made it worse.  [*Id.*].  On June 24, 2009, Dr. Lee administered a steroid injection to relieve neck and right arm pain.  [R542].  In July 2009, Plaintiff had an MRI of the cervical spine which revealed mild degenerative changes with an annular bulge at the C5-6 level, but no encroachment upon the cord or nerve roots.  [R534].  Plaintiff also had a MRI of the thoracic spine in July 2009 which revealed mild disc bulge at the T6-7 level.  [R541].

4

On October 29, 2009, Plaintiff underwent a right colectomy.  [R508].  In March 2010, it was noted that Plaintiff was doing well after her colectomy and follow up was recommended in one year.  [R699].

On January 18, 2010,  Dr. Lee administered a steroid injection to relieve neck and left arm pain.  [R538].  In April 2010, Plaintiff began physical therapy due to pain in her low back and left hip.  [R551].  She reported that lying down felt a lot better on her back.  [*Id*.].  On April 26, 2010, Dr. Lee administered a steroid injection to relieve back and left leg pain.  [R537].  On October 27, 2010, Dr. Lee administered a trigger point injection.  [R547].  Upon examination, Dr. Lee noted that the cervical spine showed normal curvature, no asymmetry of the neck and shoulders, no tenderness to palpation, no muscle spasms, and full range of motion.  [*Id*.].

A MRI of the cervical spine conducted in January 2011 revealed moderate degenerative disc changes at C5-6 in which there was disc/osteophyte complex asymmetric to the right causing mild canal as well as moderate to severe right and mild left neural foraminal narrowing.  [R703].  Dr. Lee examined Plaintiff on January 27, 2011, noting that the cervical spine showed asymmetry of the neck and shoulders with tilting of the head and neck, there was trapezius tenderness on axial compression, tenderness to palpation in the trapezial area, and that range of motion was restricted.

5

[R725-26]. On January 31, 2011, Dr. Lee administered a steroid injection to relieve neck and right arm pain. [R713].

In April 2011, on examination of the cervical spine, Dr. Lee noted Plaintiff's increased pain and restricted range of motion. [R869-70]. In July 2011, he assessed Plaintiff with fibromyalgia, insomnia, chronic fatigue syndrome, and depression. [R867].

In January 2012, on examination of Plaintiff's back, Dr. Lee noted that the thoracolumbar area showed a normal contour, normal motor strength, no atrophy, tenderness in palpation, paralumbar spasm, and a normal range of motion. [R935]. On March 26, 2012, he administered a steroid injection to relieve back and leg pain. [R962]. When Plaintiff saw Dr. Lee in April 2012, she reported that her medication provided therapeutic benefit and Dr. Lee noted that her functional activities of daily living were improved, with increased mobility to neck and upper extremities and no side effects. [R963].

Plaintiff saw Dr. Lee again in July 2012, October 2012, and January 2013. [R968, 971, 984]. At these visits, she reported her pain level to be 6/10 and that her pain improved with ice, NSAIDS, rest, and heat application. [R968, 971, 984].

6

In January 2013, Plaintiff was treated by Michael Slutzky, MD, who indicated that Plaintiff had a trigger finger–for which she previously received an injection–noting that the finger only triggers and locks one or less times daily.  [R982].

### 2. Georgia Lung Associates

On November 12, 2010, Dr. Chad I. Case noted that Plaintiff had severe COPD, but continues to smoke one pack per day despite smoking-cessation counseling. [R597].  Dr. Case recommended smoking cessation.  [*Id.*].  In February 2011, Dr. Case reported a significant improvement in Plaintiff's FEV1 performance and downgraded her COPD from severe to moderate.  [R779].  He noted that Plaintiff did not require supplemental oxygen but observed again that Plaintiff continued to smoke one pack per day despite smoking-cessation counseling.  [*Id.*].

In April 2012, an examination revealed mild air trapping and a small hiatal hernia.  [R967].

### 3. Opinion Evidence

On January 13, 2011, Dr. Case completed a Pulmonary Impairment Questionnaire.  [R623-29].  He identified clinical findings of shortness of breath, chest tightness, wheezing, fatigue, and coughing associated with her COPD.  [R624].  He declined to estimate Plaintiff's ability to sit, stand, walk, lift, or carry.  [R626].  He

7

stated that Plaintiff was not a malingerer and listed nausea and insomnia as side effects of Plaintiff's medications. [R626-27]. Dr. Case opined that Plaintiff needed to avoid wetness, odors, fumes, extreme temperatures, humidity, dust, perfumes, gases, solvents/cleaners, cigarette smoke, soldering fluxes, and chemicals. [R628-29].

On March 10, 2011, Dr. Lee completed a Multiple Impairment Questionnaire. [R808-15]. Plaintiff was diagnosed with cervical spondylosis, disorder of cervical region, and lumbar radiculopathy with a fair prognosis. [R808]. Dr. Lee opined that Plaintiff could sit for 8 hours in an 8-hour workday and stand/walk for 8 hours in an 8-hour day. [R810]. He responded "no" when asked if it was "necessary or medically recommended for your patient not to sit continuously in a work setting?" [*Id.* (emphasis removed)]. He also indicated that Plaintiff must get up and move around every 2 hours and cannot can sit again for 2 hours. [R810-11]. Dr. Lee further opined that Plaintiff could lift and carry no more than 5 pounds frequently and 10 pounds occasionally and she had limitations in repetitive reaching, handling, fingering, or lifting. [R811]. Dr. Lee indicated that Plaintiff's symptoms would likely increase if she was placed in a competitive work environment and her condition interfered with the ability to keep her neck in a constant position, such as by looking at a computer screen. [R812]. However, Dr. Lee opined that Plaintiff could do a full time competitive job

that requires keeping the neck in a constant position on a sustained basis.  [R813].  He further opined that Plaintiff would need to take unscheduled breaks every 3 to 4 hours lasting 5 to 10 minutes.  [*Id*.].  Dr. Lee also noted that Plaintiff was not a malingerer. [*Id*.].

On March 28, 2011, Carolyn Rasche, Ph.D. with the Disability Determination Services ("State Agency") opined that Plaintiff had a mental impairment of an anxiety-related disorder, but found that it was not severe.  [R816-29].

On May 20, 2011, State Agency physician Abraham Oyewo, MD, completed a physical residual functional capacity ("RFC") assessment.  [R857-64].  Dr. Oyewo opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  [R858].  He further opined that Plaintiff could stand/walk for 6 hours in a work day and sit for 6 hours in a work day.  [*Id*.].  He indicated that Plaintiff could frequently climb ramps/stairs, balance, kneel, and crawl, but could only occasionally climb ladders/ropes/scaffolds, stoop, and crouch.  [R859].  Finally, Dr. Oyewo opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  [R861].

On October 3, 2011, State Agency physician Charles Jones completed a subsequent physical RFC assessment.  [R889-96].  Like Dr. Oyewo, Dr. Jones opined

AO 72A
(Rev.8/8
2)

that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. [R890]. He further opined that Plaintiff could stand/walk for 6 hours in a work day and sit for 6 hours in a work day. [*Id.*]. Additionally, Dr. Jones opined that Plaintiff could never climb ladders/ropes/scaffolds; could occasionally climb ramps/stairs, balance, and crawl; and could frequently stoop, kneel, and crouch. [R891]. He further opined that Plaintiff was limited in reaching but had no other manipulative limitations. [R892]. Finally, Dr. Jones opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., as well as hazards such as machinery and heights. [R893].

On October 20, 2011, State Agency psychologist Allen Carter, PhD, completed a subsequent psychiatric review technique and opined that Plaintiff's mental impairments were not severe. [R897-910].

On December 14, 2012, Dr. Lee wrote a follow-up letter affirming the Multiple Impairment Questionnaire, noting that Plaintiff can stand or walk for 8 hours and sit for 8 hours; can lift or carry up to 10 pounds occasionally and 5 pounds frequently; and has significant limitations in repetitive reaching, handling, fingering, or lifting. [R977].

10

AO 72A
(Rev.8/8
2)

**C.      Hearing Testimony**

At the hearing, the ALJ first noted that Plaintiff was scheduled for a MRI in July 2012, however, the record was not in the file.  [R46-47].  Plaintiff stated that she did have a MRI in July 2012 but was unsure of the documentation.  [R47].  The ALJ stated that he would hold the record open for Plaintiff's attorney to investigate the missing MRI report.  [*Id*.].

Plaintiff testified that she lives with her husband, daughter, grandson, granddaughter, and great-grandson.  [R48].  Her husband works, her daughter is unemployed, her granddaughter is 21 and in college with a child who is 1, and her grandson is 19.  [R48].

Plaintiff testified that she is on a diabetic diet.  [R50].  She has a GED and an Associate's degree. [R51].  She further testified that she stopped working in November 2010 when she was let go due to missing too much work.  [R52].  Plaintiff also testified that she received a severance package.  [*Id*.].  She stated that she missed work because she had surgeries, and physical therapy, and that she would call in sick "on the bad days where the pain was too much." [R54].  Plaintiff testified that she would be absent from work at least three days per month.  [R55].  She applied for and received unemployment benefits until December 2012 and during that time she continued to look for work.

11

[R52].  She is no longer looking for work.  [*Id*.].  She still has the same amount of doctor's visits as she did when she was working, but she no longer goes to physical therapy, which she used to attend twice a week.  [R55].  She testified that her condition has gotten worse.  [R56].

Regarding her pain, Plaintiff testified that when she worked, she would have pain in her neck, between her shoulder blades, lower back, and pain in her arms or legs due to a pinched nerve.  [R56].  Plaintiff stated that the arm pain affected her ability to perform her job because the pain would be in her right arm and she is right-handed, and she could not sit for too long because of the pain in her mid-back area.  [R56-57].  Her physical therapy and frequent doctor's visits were for back treatment.  [R57].  Plaintiff testified that she was treated by Dr. Lee for pain management and physical therapy. [*Id*.].  Dr. Lee gave her epidural injections three times a year: two in the neck and one in the lumbar area of the back.  [*Id*.].  He also prescribed Norco, Robaxin, and Cymbalta.  [*Id*.].

Plaintiff testified that she can stand for 20 minutes before needing to sit, sit for 45 minutes, and walk about a block before needing to take a 10 to 15 minute break. [R63].  She testified that she can lift 7 or 8 pounds and can lift more with her right hand than with her left due to the brace, but that she cannot lift repetitively.  [R63-64].  She

12

can reach overhead, but has difficulty bending and difficulty picking a quarter off the table.  [R64].

Plaintiff also testified that she is seeing pulmonologist Dr. Case to treat her COPD, which she has had for the previous 7 years.  [R59, 60].  With COPD, Plaintiff experiences shortness of breath that causes coughing and bronchitis.  [R59].  She testified that this condition affects her ability to exert herself physically, such that she cannot walk long distances without having to stop to catch her breach, and cannot mop the floor.  [R60].  Plaintiff also testified that the pain affects her breathing.  [*Id*.].  She testified that Dr. Case prescribed Advair, an albuterol inhaler, and nose spray to treat her COPD, however, her shortness of breath symptoms are not getting better, although the Advair helps.  [*Id*.].

Plaintiff testified that she smokes cigarettes, and is aware that it is bad for her health and has been advised to quit.  [R53].  Plaintiff testified that she tried to quit, but every member of the house smokes, except the baby, which makes it hard to quit.  [*Id*.].  Upon questioning by the ALJ, Plaintiff testified that her doctors have told her that smoking, either by her or the members of her household, might have an impact on her pulmonary problems.  [R59-60].  She stated that she would quit for about 6 months

13

before she would start smoking again.  [R53].  During her periods of cessation, she would cough less, but the shortness of breath did not go away.  [R61].

Plaintiff wore a brace on her left wrist at the hearing and testified that x-rays did not find anything, and she was told that it looked like a sprain.  [*Id*].  She also testified that she has been diagnosed with trigger finger in her right hand in which the middle finger would get stuck, causing pain to the other fingers, and that she would have to straighten it with her other hand.  [R62].  This condition makes it difficult for her to write and very difficult to use a computer mouse.  [*Id*.].  Plaintiff has had this problem for about two months.  [R61].  She testified that her doctor has recommended surgery, but it has not yet been scheduled.  [R62].

Plaintiff testified that she had surgery in 2009, in which half her colon was removed due to the presence of cancerous cells.  [R65-66].  She was tested a year later with no signs of cancer.  [R66].  Since the surgery, Plaintiff has had occasional issues with incontinence.  [*Id*.].  She testified that this happens a couple times a week, but as long as she takes all of her medications, she does fairly well.  [*Id*.].  She had these issues while she was working and had to keep extra clothes at work.  [*Id*.].

Plaintiff testified that she does not use a cell phone, but that she has a computer in her house and knows how to use it.  [R54].  She has health care coverage through her

14

husband and had not been in mental health counseling for 20 years. [*Id*.]. She bought a treadmill on doctor's advice, but does not exercise because she ends up injuring her back or having some other problems. [R63].

On a typical day, Plaintiff gets up and has coffee and something eat to take her pills. [R65]. Once the medications take effect, she feeds her dogs, watches television, and tries to read. [*Id*.]. She does kitchen work in the mornings. [*Id*.]. On a bad day, she does not do anything but lay down and watch television; on a good day, she does more chores around the house, such as the laundry. [*Id*.]. She tries to do a load of laundry a week. [*Id*.].

The vocational expert ("VE") identified Plaintiff's previous work as a system programmer as a programmer analyst as skilled and sedentary. [R67]. The VE testified that a person that could lift and carry 10 pounds occasionally and lesser amounts more frequently and could stand and/or walk at least 2 hours in an 8-hour day could perform Plaintiff's past relevant work. [R69]. The VE opined that Plaintiff's past employment afforded some latitude between sitting and standing because they are profession positions, but added that the positions require sedentary effort to the jobs. [R69-70]. Further, the VE opined that if someone has mild or moderate pain, they should be able to maintain attention and complete job tasks. [*Id*.]. However, if the person has

15

moderately severe or severe pain for a great portion of time, the VE opined that the person would not be able to concentrate and pay attention to tasks.  [*Id*.].

The VE also testified that if a person had the limitations similar to those assessed by Dr. Lee in the Multiple Impairment Questionnaire, [R808-15], the person could not do Plaintiff's previous work, because such a person would need to get up and move around every 2 hours and take another 2hours before she could sit again, which would remove the person from her work station for at least 4 hours of the day, and would also be moderately limited in grasping, using fingers for fine manipulations, and using arms for reaching on the right side. [R71].  However, the VE opined that there would be sedentary unskilled work that the person could perform.  [*Id*.].

In a closing argument, Plaintiff argued that, although Plaintiff's impairments do not quite meet the listing for COPD, her FEV1 values were just barely above the requirements for Listing 1.16.  [R72].  Thus, the combination of her medication side effects, pain symptoms, documented neck and back issues, and incontinence, would result in a residual functional capacity (RFC) less than sedentary or even light work. [R73].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

16

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.     The claimant has not engaged in substantial gainful activity since November 4, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.     The claimant has the severe impairments of diabetes, by history and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c)).

. . .

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5.     The claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

. . .

6.     The claimant is capable of performing past relevant work. (20 CFR 404.1565).

. . .

7.     The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2010, through the date of this decision (20 CFR 404.1520(f)).

AO 72A
(Rev.8/8
2)

[R25-35].

In addition to the above findings, the ALJ also found that Plaintiff has been treated for incontinence, obesity, history of nicotine addiction, depression and anxiety; however, the ALJ found these impairments not to be severe as they do not cause more than a minimal impact on Plaintiff's physical functioning as Plaintiff has not reported any significant work-related limitations from these conditions and they are controlled with medication.  [R29-30].

Within the RFC determination, the ALJ found that Plaintiff was not entirely credible.  [R31].  In analyzing Plaintiff's credibility, the ALJ considered Plaintiff's daily activities and found that Plaintiff has only mild limitations as she was not limited to the extent one would expect, given her complaints of disabling symptoms and limitations.   The ALJ found that Plaintiff's reported daily activities were not inconsistent with the RFC.  [R31].

The ALJ also analyzed the medical evidence and found that the objective findings do not provide strong support for Plaintiff's allegations of disabling symptoms and limitations and do not support the existence of limitations greater than the RFC. [R32].

18

Regarding precipitating and aggravating factors, the ALJ found that Plaintiff's nicotine abuse has a negative impact on both her respiratory impairments and shows Plaintiff's blatant noncompliance with doctors' recommendations. [R33]. The ALJ opined that any respiratory problems are probably exacerbated by the effects of cigarette smoking and that Plaintiff's alleged respiratory symptoms are not as intense, chronic and debilitating as alleged. [*Id.*]. The ALJ further noted that Plaintiff's medical treatment has been conservative and routine, and the medical records reveal that the medications have been relatively effective in controlling Plaintiff's symptoms. [*Id.*].

The ALJ found inconsistencies in Plaintiff's testimony regarding being terminated: he found it odd that Plaintiff received severance pay and unemployment benefits when she testified she was terminated for cause for missing work. [*Id.*]. Moreover, the ALJ noted that a person collecting unemployment benefits is required to certify that they are ready, willing and able to work. [*Id.*].

With regard to the opinion evidence, the ALJ assigned substantial weight to Dr. Lee's opinion that Plaintiff was capable of working full time, finding that that opinion was consistent with the totality of the evidence. [R33-34]. However, the ALJ assigned partial weight to the remainder of the opinion, finding that Dr. Lee's opinion

19

that Plaintiff was incapable of being at her workstation for four hours per day as unpersuasive and not dispositive. [R34]. The ALJ assigned lesser weight to the opinions of the State Agency physicians, finding that additional evidence along with Plaintiff's testimony demonstrated that Plaintiff was slightly more limited than was originally determined. [*Id*.].

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing

20

the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See*

AO 72A
(Rev.8/8
2)

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  *See* 20 C.F.R. §§ 404.1520(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n. 2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact

AO 72A
(Rev.8/8
2)

resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as

23

unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff raises two issues:  (1) the ALJ failed to properly weigh the medical evidence, and (2) the ALJ failed to properly evaluate Plaintiff's credibility. [Doc. 8 at 2].  The Court addresses each of these issues in turn.

### A.     Weight Given to Medical Evidence

#### 1.      Arguments of the Parties

Plaintiff first argues that the ALJ did not provide reasons why he did not give substantial weight to Dr. Lee's opinion that Plaintiff was incapable of being at her workstation for 4 hours per day.  [Doc. 8 at 14 (citing [R34])].  Plaintiff argues that Dr. Lee, Plaintiff's treating physician, offered numerous opinions that conflicted with the ALJ's RFC and require a finding of disability.  [*Id.* at 15].  Specifically, Plaintiff argues that Dr. Lee opined that Plaintiff would need to get up and move around every

24

2 hours when sitting and not sit again for 2 hours and was moderately limited in grasping, using the fingers for fine manipulations, and using the arms for reach on the right side. [*Id.* (citing [R810-12])]. Plaintiff argues that the VE testified that such an individual could not perform Plaintiff's past work. [*Id.*]. Plaintiff contends that the ALJ offered no reason for rejecting these limitations other than the fact that they were not supported by the record. [*Id.* at 15-16]. Plaintiff also argues that the ALJ did not dispute that Dr. Lee relied on appropriate clinical and diagnostic testing; therefore, his opinion should have been given controlling weight. [*Id.* at 16]. Plaintiff further submits that, even if Dr. Lee's opinion was not entitled to controlling weight, it was entitled to deference based on the factors provided in 20 C.F.R. § 404.1527. [*Id.* at 16-17].

In response, the Commissioner argues that Dr. Lee provided inconsistent opinions in the Multiple Impairment Questionnaire, [R808-15]. [Doc. 9 at 7-8]. The Commissioner argues that Dr. Lee opined that Plaintiff could sit for 8 hours in an 8-hour day and stand or walk for 8 hours and he circled "no" in response to a question regarding whether it was necessary or medically recommended for Plaintiff not to sit continuously in a work setting. [*Id.* (citing [R810])]. The Commissioner notes that Dr. Lee inconsistently opined that Plaintiff must get up and move around every 2 hours

25

and could not sit again for 2 hours.  [*Id*. at 8 (citing [R810-11])].  The Commissioner also noted that Dr. Lee opined that Plaintiff's limitations began in August 2008, more than 2 years before her alleged onset date.  [*Id*. (citing [R814])].

The Commissioner appears to argue that Dr. Lee's opinion that Plaintiff was incapable of being at her workstation for 4 hours per day is a RFC finding, not a medical opinion and thus the ALJ was entitled to reject it.  [*Id*. at 8-9].  The Commissioner argues that, even if the ALJ were required to treat the finding as a medical opinion, "the record is clear the ALJ considered the 'pertinent elements' of the opinion."  [*Id*. at 9 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011))].

The Commissioner further argues that Plaintiff's argument that the ALJ erred in articulating his reasons for rejecting the limitation is without merit, as an ALJ may implicitly reject portions of a treating opinion as long as the record shows the ALJ considered the opinion.  [*Id*. (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *Hanback v. Comm'r, Soc. Sec. Admin.*, 581 Fed. Appx. 840, 841 (11th Cir. Nov. 6, 2014))].

Plaintiff did not file a reply brief.  [*See* Dkt.].

26

AO 72A
(Rev.8/8
2)

###### 2.    Discussion

The Court concludes that substantial evidence supports the weight given to Dr. Lee's opinion.  A treating physician's medical opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (stating that the treating physician's opinion that is well-supported and not inconsistent with other evidence receives "controlling weight").  Further, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440; *see also* 20 C.F.R. § 404.1527(c)(2) (requiring the ALJ to "give good reasons" for not giving weight to a treating physician's opinion).

In this case, the ALJ assigned partial weight to the opinion overall, giving substantial weight to the majority of the opinion with the exception that the ALJ found that Dr. Lee's opinion that Plaintiff is incapable of being at her workstation for 4 hours was unpersuasive and not dispositive.  [R33-34].  Plaintiff takes issue with the latter finding, arguing that the ALJ failed to provide good reasons for rejecting this opinion. [Doc. 8 at 14-16].  However, the ALJ's reason, that this opinion was "unpersuasive and

not dispositive," combined with the remainder of the discussion of Dr. Lee's opinion, is sufficient to constitute substantial evidence.

As the ALJ noted, when asked how long Plaintiff could sit, stand, or walk in a day, Dr. Lee opined that Plaintiff could sit for a full 8 hours in an 8-hour workday and stand/walk for 8 hours in an 8-hour day. [R33, 810]. This was in response to questions 1 and 2 regarding Plaintiff's RFC. [R810]. Question 3 then asked if it would be "necessary or medically recommended for your patient not to sit continuously in a work setting?" to which Dr. Lee responded "no." [*Id.* (emphasis removed)]. This response gave further support to the conclusion that Plaintiff could sit continuously for 8 hours. As subparts to question 3, question (a) asked "How frequently must your patient get up and move around?" to which Dr. Lee responded every 2 hours, and question (b) asked "How long before your patient can sit again?" to which Dr. Lee responded 2 hours. [R810-11]. These responses are inconsistent with Dr. Lee's earlier statements that Plaintiff was capable of sitting for 8 hours in a workday without needing to get up. Thus, the ALJ properly rejected that portion of the opinion opining that she had to be away from her workstation 4 hours per day, reasoning that it was unpersuasive and not dispositive.

28

Moreover, Plaintiff does not challenge Dr. Lee's opinion that Plaintiff is able to sit for 8 hours without getting up. [*See* Doc. 8, *passim*]. Plaintiff makes no attempt to reconcile these findings and does not cite to any other evidence to support her position other than the diagnoses and MRI. [*See id.* at 17]. In fact, in Dr. Lee's follow-up letter in December 2012, Dr. Lee continued to stress that Plaintiff could stand or walk for 8 hours and sit for 8 hours in an 8-hour day and made no mention of a requirement to get up every 2 hours or waiting another 2 hours to sit. [R977]. Because Dr. Lee's earlier opinion, that Plaintiff would be required to be away from her workstation for 4 hours, is inconsistent with the remainder of his opinion and the follow-up letter, the Court finds that any error by the ALJ to more fully articulate his reason for rejecting this opinion is harmless.

As a result, the Commissioner's decision is not subject to reversal on this ground.

## B.   Plaintiff's Credibility

### 1.   Arguments of the Parties

Plaintiff argues that the ALJ's credibility assessment was insufficient. [Doc. 8 at 19]. Plaintiff argues that the fact that she can perform sporadic activities of daily living for short periods fails to contradict her other allegations and does not establish that Plaintiff can carry on full-time employment. [*Id.* (citing *Lewis*, 125 F.3d at 1441;

29

*Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986))].  Plaintiff also argues that the ALJ did not explain what objective findings he found inconsistent with Plaintiff's allegations or why they were inconsistent, and furthermore, allegations of pain cannot be based solely on objective medical evidence.  [*Id*. at 20 (citing SSR 96-7p)].

Next, Plaintiff argues that the ALJ erred by finding that Plaintiff was not as limited as she alleged because her treatment helped.  [*Id*. (citing *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011))].  Plaintiff further argues that the ALJ's finding that she is not credible because she continues to smoke is also inappropriate.  [*Id*. at 20-21 (citing *Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000))].  Plaintiff argues that there is no evidence that her medical conditions are disabling because she continued smoking or that she would improve to a degree of being able to work if she ceased smoking.  [*Id*. at 21].  Moreover, Plaintiff argues, even if there is a link established between smoking and the alleged symptoms, a failure to stop does not necessarily support a finding that Plaintiff's testimony is not credible because of the addictive nature of cigarettes.  [*Id*. (citing *Shramek*, 226 F.3d at 813)].  Plaintiff argues that at least one court in this Circuit has found *Shramek* persuasive.  [*Id*. at 21-22 (citing *Seals v. Barnhart*, 308 F. Supp. 2d 1241 (N.D. Ala. 2004))].

Plaintiff also argues that the ALJ failed to cite to any medical or legal authority that Plaintiff's testimony conflicted with the "conservative" treatment she received, arguing that the ALJ substituted his own lay opinion for that of a doctor.  [*Id*. at 22].

Plaintiff further contends that a pension from her job does not mean that she was not fired.  [*Id*.].  Also, Plaintiff argues that the receipt of unemployment benefits does not preclude the receipt of disability benefits.  [*Id*. (citing Memorandum 10-1258 of Frank Cristaudo, Chief Administrative Law Judge for the Social Security Administration (Aug. 9, 2010), attached as [Doc. 8-1]; *O'Sneal v. Astrue*, No. 3:08-cv-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009))].

Finally, Plaintiff argues that the ALJ failed to give any serious consideration to the enumerated factors in SSR 96-7p.  [*Id*. at 23].  Plaintiff argues that she has an honorable work history with consistent earnings for over 25 years and earned $84,000 the last year she worked.  [*Id*.].  Plaintiff argues that this is not the picture of an individual who is exaggerating or has no desire to work.  [*Id*.].

The Commissioner argues in response that the ALJ properly evaluated Plaintiff's credibility and identified several reasons for discrediting Plaintiff's statements. [Doc. 9 at 10].  Regarding Plaintiff's statements of daily activities, the Commissioner argues that the ALJ explained that such activities are not inconsistent with sedentary

31

work.  [*Id*. at 10-11 (citing [R31])].  The Commissioner further argues that the ALJ did not rely on Plaintiff's activities in evaluating her credibility, nor did the ALJ find Plaintiff's activities to be dispositive evidence of her ability to work.  [*Id*. at 11].

The Commissioner stands by the ALJ's finding that Plaintiff's treatment was conservative and routine in support that her allegations were not fully credible.  [*Id*. at 11-12].  Further, the Commissioner argues that the medications were relatively effective in controlling Plaintiff's symptoms, which fact undermines her allegations of disabling symptoms.  [*Id*. at 12].  The Commissioner also argues that the ALJ correctly noted that Plaintiff's smoking habit undermined her allegations of respiratory symptoms.  [*Id*. (citing *Holley v. Chater*, 931 F. Supp. 840, 847-48 (S.D. Fla. 1996); *Weathers v. Astrue*, No. 7:10-CV-03 (HL), 2011 WL 1103348, at *4 (M.D. Ga. Feb. 24, 2011))].  Moreover, the Commissioner contends that the ALJ did not base his decision on a finding of noncompliance with the doctor's recommendations to quit and simply cited it as evidence undermining Plaintiff's credibility.  [*Id*. at 13].  The Commissioner further argues that Plaintiff's reliance on Seventh Circuit law inappropriate since there is authority that is on-point in this jurisdiction.  [*Id*. at 13-14].  Finally, the Commissioner claims that the ALJ properly noted that Plaintiff received

32

unemployment benefits and continued to look for work amounted to additional evidence undermining Plaintiff's credibility.  [*Id*. at 14].

### 2.    Discussion

The Court concludes that substantial evidence supports the ALJ's credibility determination.  Plaintiff challenges each reason the ALJ provided for not finding her allegations fully credible, arguing that each reason is not a basis to not find her fully credible.  [Doc. 8 at 18-23].  As noted by the Commissioner, no one reason was the sole basis for the ALJ's adverse credibility finding, but were factors in the overall credibility determination.  The Court finds that the ALJ properly considered the majority of these factors as reasons for finding Plaintiff's allegations to not be fully credible.  The ALJ's analysis is also consistent with the factors listed in SSR 96-7p.

The first factor is the individual's daily activities.  SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. Jul. 2, 1996).  As the ALJ noted, Plaintiff's daily activities are not inconsistent with the RFC.  [R31].  As part of her daily activities, Plaintiff testified that she uses a computer and does kitchen work in the mornings.  [R54, 65].  Moreover, her activities are not inconsistent with Dr. Lee's opinion that she is able to sit for 8 hours a day without needing to get up.  [R810].

AO 72A
(Rev.8/8
2)

The second factor is the location, duration, frequency, and intensity of the individual's pain or other symptoms. 1996 WL 374186 at *3. Although not mentioned by name, the ALJ discussed Plaintiff's medical history pertaining to her allegations of pain. [R32-33]. Plaintiff also did not cite to any evidence in the record to suggest that this factor weighs in her favor.

The third consideration is factors that precipitate and aggravate the symptoms. 1996 WL 374186 at *3. The ALJ specifically discussed this factor in regards to Plaintiff's COPD, finding that Plaintiff's continued smoking has a negative impact on her respiratory impairments and suggests that her symptoms are not as intense, chronic and debilitating as alleged. [R33]. Plaintiff cites to *Shramek*, a Seventh Circuit decision, in support of her argument that it was inappropriate to consider Plaintiff's smoking as a factor. [Doc. 8 at 21]. The Court first notes that *Shramek* is not binding on this Court. *See Minor v. Dugger*, 864 F.2d 124, 126 (11th Cir. 1989) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."). Second, the Seventh Circuit found that all reasons provided by the ALJ for discrediting plaintiff's allegations were either unreliable or not supported by the record. *See Shramek*, 226 F.3d at 812-13. Here, the ALJ provided other valid reasons for discrediting Plaintiff's allegations. Therefore, even if the ALJ's finding with regard to

34

the impact on smoking was erroneous, the error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding an error harmless where the ALJ would have reached the same decision despite the error); *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1227 (9th Cir. 2009) (concluding that even if rejection of *Shramek* analysis was error, ALJ presented other independent bases for discounting plaintiff's credibility).

The fourth factor is to consider the type, dosage, effectiveness, and side effects of the medication. 1996 WL 374186 at *3. Here, the ALJ noted that the record reflects that Plaintiff showed improvement in her symptoms when taking the prescribed medications and did not report negative side effects. [R32, 33]. Plaintiff does not challenge this finding. [*See* Doc. 8, *passim*]. Besides the failure to quit smoking, the ALJ noted that the record suggested that Plaintiff had not been compliant with taking her medication. [R33]. Plaintiff also did not challenge this finding. [*See* Doc. 8, *passim*].

The fifth factor is to consider any treatment other than medication Plaintiff receives. 1996 WL 374186 at *3. Here, the ALJ noted that her treatment has been conservative and routine. Again, any error in this regard is harmless. While the ALJ may have played doctor in this instance by substituting his own lay opinion for that of

35

the treating physician, *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *Marbury v. Sullivan*, 957 F.2d 837, 840-841 (11th Cir. 1992) (Johnson, J. concurring) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians."), it was not the sole reason provided for discrediting Plaintiff's allegations.

The sixth factor is to consider any measures other than treatment the plaintiff uses to relieve symptoms. 1996 WL 374186 at *3. Here, the ALJ noted that Plaintiff reported that her pain improved with ice, NSAIDS, rest and heat application. [R32]. The ALJ also discussed Plaintiff's testimony demonstrating that he considered this factor. [*Id.* ("[T]he claimant noted that with medication usage, functional activities of daily living were improved with increased mobility to the neck and upper extremities. Indeed, on January 16, 2012 and October 1, 2012, Dr. Lee noted that when the claimant takes pain medication appropriately, she reports that the medication is of therapeutic value and denies any negative side effects[.]")]. Thus, this factor supports the ALJ's downgrading of Plaintiff's subjective complaints of disability.

The seventh factor directs consideration of any other factors concerning her limitations and restrictions. 1996 WL 374186 at *3. Here, the ALJ discussed the

36

inconsistency in Plaintiff's testimony surrounding whether she was fired due to missing work and the fact that she represented for purposes of unemployment benefits that she could work and, in fact, continued to look for work.  [R33].  While Plaintiff cites to the memorandum of the Chief Administrative Law Judge to demonstrate that receipt of unemployment benefits does not automatically preclude benefits, the memorandum nonetheless indicates that it may be used as a factor to evaluate Plaintiff's credibility, as it was here.  [*See* Doc. 8-1]; *see also Sasnette v. Colvin*, No. 5:14-CV-362-VEH, 2015 WL 4459381, at *5 (N.D. Ala. July 21, 2015) (citing cases); *see also Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) ("[W]e are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability.") (emphasis in original); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (acknowledging that "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime"); *Kalishek v. Astrue*, No. 8:10-cv-714-T-23AEP, 2011 WL 4389643, *5 (M.D. Fla. Aug. 23, 2011) ("[A]n ALJ may certainly consider a claimant's receipt of unemployment compensation in making a credibility determination") (citations omitted) (R&R), *adopted* 2011 WL 4389717

(M.D. Fla. Sept. 21, 2011), *aff'd*, 470 Fed. Appx. 868 (11th Cir. May 30, 2012). Thus, it was appropriate for the ALJ to consider Plaintiff's receipt of unemployment benefits in conjunction with other factors in evaluating, and eventually rejecting, Plaintiff's credibility.

Finally, Plaintiff's argument that just because she received a pension from her job does not mean that she was fired, has little merit. Plaintiff testified that she received a severance, [R52], and asserts for the first time in her brief that it was not a severance but rather a pension. [Doc. 8 at 22]. The ALJ did not err in concluding that if Plaintiff received severance pay, then she may not have been fired for missing too much work. This Court's role is not to judge Plaintiff's credibility, but only to determine whether substantial evidence exists supporting the ALJ's credibility choices upon application of the proper legal standards. *Character v. Colvin*, No. 1:13-CV-02749-AJB, 2015 WL 1481114, at *11 (N.D. Ga. Mar. 31, 2015); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) (observing that credibility determinations are left to the Commissioner and not to the courts).

While the ALJ's credibility determination was not perfect, his essential findings about Plaintiff's disability were supported by substantial evidence and in accordance with applicable law. As a result, the decision is not subject to reversal on this ground.

AO 72A
(Rev.8/8
2)

## VII.   CONCLUSION

For the reasons above, the undersigned **RECOMMENDS** that the final decision of the Commissioner be  **AFFIRMED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this the 11th day of December, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

39