**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JACQUELYN THOMAS LUNGSTRUM,** | |
| **Plaintiff,** | |
| v. | **1:14-cv-2828-WSD** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [10] ("R&R").  The R&R recommends that the

Court affirm the final decision of the Commissioner of the Social Security

Administration (the "Commissioner") denying Plaintiff Jacquelyn Thomas

Lungstrum's ("Plaintiff") application for Disability Insurance Benefits ("DIB").

Also before the Court are Plaintiff's Objections to the R&R [12].

## I.    BACKGROUND

### A.    Procedural History

On December 13, 2010, Plaintiff filed her application for DIB, alleging

disability commencing on November 4, 2010.  (Record [5] (hereinafter "R") 25).

After Plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on January 9, 2013.  (R25).  On February 4, 2013, the ALJ issued a decision denying Plaintiff's application on the ground that she had not been under a "disability" from November 4, 2010, through the date of the decision.  (R25-35).  Plaintiff sought review by the Appeals Council.  On July 2, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R5-7).

On September 2, 2014, Plaintiff filed her Complaint [1], seeking review of the Commissioner's decision.  On December 11, 2015, the Magistrate Judge issued his R&R, recommending that the Court affirm the Commissioner's decision.  On December 18, 2015, Plaintiff filed her Objections to the R&R.

B.    Facts[1]

Plaintiff was sixty (60) years old at the time of the ALJ's decision.  (R35, 48, 58).  She has a GED, an Associate's degree, (R51), has attended software classes, (R52), and has past relevant work as a systems programmer and

---

[1]    The facts are taken from the R&R and the record.  The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

programmer analyst.  (R66).  Plaintiff filed for DIB alleging disability due to diabetes, COPD, emphysema, depression, severe joint pain, and arthritis.  (R160).

       1.   *Medical History – Pinnacle Orthopedics*

On October 2, 2008, Plaintiff began treatment at Pinnacle Orthopedics for neck and shoulder pain.  (R594).  On October 20, 2008, Yong S. Lee, M.D., gave Plaintiff a cervical epidural steroid injection to relieve neck pain and right arm pain.  (R544).  Plaintiff had been diagnosed with stress urinary incontinence and, on March 31, 2009, underwent a cystoscopy.  (R523).  In May 2009, Plaintiff began physical therapy for pain in her neck and mid-back.  (R591).  Plaintiff reported that her symptoms were relieved by medication and sitting, but prolonged standing, prolonged sitting, and lifting worsened her symptoms.  (Id.).  On June 24, 2009, Dr. Lee administered a steroid injection to relieve neck and right arm pain.  (R542).  In July 2009, Plaintiff had a MRI of the cervical spine which revealed mild degenerative changes with an annular bulge at the C5-6 level, but no encroachment upon the cord or nerve roots.  (R534).  Also in July 2009, Plaintiff had a MRI of the thoracic spine which revealed mild disc bulge at the T6-7 level.  (R541).

On October 29, 2009, Plaintiff underwent a right colectomy.  (R508).  In March 2010, it was noted that Plaintiff was doing well after her colectomy, and

follow-up was recommended in one year.  (R699).

On January 18, 2010, Dr. Lee administered a steroid injection to relieve neck and left arm pain.  (R538).  In April 2010, Plaintiff began physical therapy due to pain in her low back and left hip.  (R551).  She reported that lying down felt a lot better on her back.  (Id.).  On April 26, 2010, Dr. Lee administered a steroid injection to relieve back and left leg pain.  (R537).  On October 27, 2010, Dr. Lee administered a trigger point injection.  (R547).  Upon examination, Dr. Lee noted the cervical spine showed normal curvature, there was no asymmetry of the neck and shoulders, no tenderness to palpation, no muscle spasms, and full range of motion.  (Id.).

In January 2011, a MRI of the cervical spine revealed moderate degenerative disc changes at C5-6 in which there was disc/osteophyte complex asymmetric to the right, causing mild canal as well as moderate-to-severe right and mild left neural foraminal narrowing.  (R703).  On January 27, 2011, Dr. Lee examined Plaintiff, noting:  the cervical spine showed asymmetry of the neck and shoulders with tilting of the head and neck; there was trapezius tenderness on axial compression, tenderness to palpation in the trapezial area; and range of motion was restricted.  (R725-26).  On January 31, 2011, Dr. Lee administered a steroid injection to relieve neck and right arm pain.  (R713).

4

In April 2011, on examination of the cervical spine, Dr. Lee noted Plaintiff's increased pain and restricted range of motion. (R869-70). In July 2011, he assessed Plaintiff with fibromyalgia, insomnia, chronic fatigue syndrome, and depression. (R867).

In January 2012, on examination of Plaintiff's back, Dr. Lee noted that the thoracolumbar area showed a normal contour, normal motor strength, no atrophy, tenderness in palpation, paralumbar spasm, and a normal range of motion. (R935). On March 26, 2012, he administered a steroid injection to relieve back and leg pain. (R962). In April 2012, Plaintiff reported to Dr. Lee that her medication provided therapeutic benefit, and Dr. Lee noted that her functional activities of daily living were improved, with increased mobility to neck and upper extremities and no side effects. (R963).

Plaintiff saw Dr. Lee again in July 2012, October 2012, and January 2013. (R968, 971, 984). At these visits, she reported her pain level to be 6/10 and that her pain improved with ice, NSAIDS, rest, and heat application. (R968, 971, 984).

In January 2013, Plaintiff was treated by Michael Slutzky, M.D., who indicated that Plaintiff had a trigger finger—for which she previously received an injection—noting that the finger only triggers and locks one or less times daily. (R982).

2.    *Medical History – Georgia Lung Associates*

On November 12, 2010, Dr. Chad I. Case noted that Plaintiff had severe

COPD, but continues to smoke one pack per day despite smoking-cessation

counseling.  (R597).  Dr. Case recommended smoking cessation.  (Id.).  In

February 2011, Dr. Case reported a significant improvement in Plaintiff's FEV1

performance and downgraded her COPD from severe to moderate.  (R779).  He

noted that Plaintiff did not require supplemental oxygen but observed again that

Plaintiff continued to smoke one pack per day despite smoking-cessation

counseling.  (Id.).

In April 2012, an examination revealed mild air trapping and a small hiatal

hernia.  (R967).

3.    *Medical History – Opinion Evidence*

On January 13, 2011, Dr. Case completed a Pulmonary Impairment

Questionnaire.  (R623-29).  He identified clinical findings of shortness of breath,

chest tightness, wheezing, fatigue, and coughing associated with Plaintiff's COPD.

(R624).  He declined to estimate Plaintiff's ability to sit, stand, walk, lift, or carry.

(R626).   He stated that Plaintiff was not a malingerer and listed nausea and

insomnia as side effects of Plaintiff's medications.  (R626-27).  Dr. Case opined

that Plaintiff needed to avoid wetness, odors, fumes, extreme temperatures,

humidity, dust, perfumes, gases, solvents/cleaners, cigarette smoke, soldering fluxes, and chemicals.  (R628-29).

On March 10, 2011, Dr. Lee completed a Multiple Impairment Questionnaire.  (R808-15).  Plaintiff was diagnosed with cervical spondylosis, disorder of cervical region, and lumbar radiculopathy with a fair prognosis. (R808).  Dr. Lee opined that Plaintiff could sit for eight (8) hours in an eight-hour workday and stand/walk for eight (8) hours in an eight-hour day.  (R810).  He responded "no" when asked if it was "necessary or medically recommended for your patient not to sit continuously in a work setting."  (Id. (emphasis removed)). He also indicated that Plaintiff must get up and move around every two (2) hours and cannot can sit again for two (2) hours.  (R810-11).  Dr. Lee further opined that Plaintiff could lift and carry no more than five (5) pounds frequently and ten (10) pounds occasionally, and she had limitations in repetitive reaching, handling, fingering, or lifting.  (R811).  Dr. Lee indicated that Plaintiff's symptoms would likely increase if she was placed in a competitive work environment and her condition interfered with the ability to keep her neck in a constant position, such as by looking at a computer screen.  (R812).  Dr. Lee opined, however, that Plaintiff could do a full time competitive job that requires keeping the neck in a constant position on a sustained basis.  (R813).  He further opined that Plaintiff would need

7

to take unscheduled breaks every three (3) to four (4) hours lasting five (5) to ten (10) minutes.  (Id.).  Dr. Lee also noted that Plaintiff was not a malingerer.  (Id.).

On March 28, 2011, Carolyn Rasche, Ph.D., with the Disability Determination Services ("State Agency") opined that Plaintiff had a mental impairment of an anxiety-related disorder, but found that it was not severe. (R816-29).

On May 20, 2011, State Agency physician Abraham Oyewo, M.D., completed a physical residual functional capacity ("RFC") assessment.  (R857-64). Dr. Oyewo opined that Plaintiff could lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently.  (R858).  He further opined that Plaintiff could stand/walk for six (6) hours in a work day and sit for six (6) hours in a work day.  (Id.).  He indicated that Plaintiff could frequently climb ramps/stairs, balance, kneel, and crawl, but could only occasionally climb ladders/ropes/scaffolds, stoop, and crouch.  (R859).  Finally, Dr. Oyewo opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  (R861).

On October 3, 2011, State Agency physician Charles Jones completed a subsequent physical RFC assessment.  (R889-96).  Like Dr. Oyewo, Dr. Jones opined that Plaintiff could lift and carry twenty (20) pounds occasionally and ten

(10) pounds frequently.  (R890).  He further opined that Plaintiff could stand/walk

for six (6) hours in a work day and sit for six (6) hours in a work day.  (Id.).

Additionally, Dr. Jones opined that Plaintiff could never climb ladders, ropes, or

scaffolds; could occasionally climb ramps/stairs, balance, and crawl; and could

frequently stoop, kneel, and crouch.  (R891).  He further opined that Plaintiff was

limited in reaching but had no other manipulative limitations.  (R892).  Finally,

Dr. Jones opined that Plaintiff should avoid concentrated exposure to fumes, odors,

dusts, gases, poor ventilation, etc., as well as hazards such as machinery and

heights.  (R893).

On October 20, 2011, State Agency psychologist Allen Carter, PhD,

completed a subsequent psychiatric review technique and opined that Plaintiff's

mental impairments were not severe.  (R897-910).

On December 14, 2012, Dr. Lee wrote a follow-up letter affirming the

Multiple Impairment Questionnaire, noting that Plaintiff can stand or walk for

eight (8) hours and sit for eight (8) hours; can lift or carry up to ten (10) pounds

occasionally and five (5) pounds frequently; and has significant limitations in

repetitive reaching, handling, fingering, or lifting.  (R977).

4.    *Hearing Testimony*

Plaintiff testified that she lives with her husband, daughter, grandson,

granddaughter, and great-grandson.  (R48).  Her husband works, her daughter is unemployed, her granddaughter is twenty one (21) and in college with a one-year-old child, and her grandson is nineteen (19).  (R48).

Plaintiff testified that she is on a diabetic diet.  (R50).  She has a GED and an Associate's degree.  (R51).  She further testified that she stopped working in November 2010 when she was let go due to missing too much work.  (R52).  Plaintiff also testified that she received a severance package.  (Id.).  She stated that she missed work because she had surgeries and physical therapy, and that she would call in sick "on the bad days where the pain was too much."  (R54).  Plaintiff testified that she would be absent from work at least three (3) days per month.  (R55).  She applied for and received unemployment benefits until December 2012, and during that time she continued to look for work.   (R52).  She is no longer looking for work.  (Id.).  She still has the same amount of doctor's visits as she did when she was working, but she no longer goes to physical therapy, which she used to attend twice a week.  (R55).  She testified that her condition has worsened.  (R56).

Regarding her pain, Plaintiff testified that when she worked, she would have pain in her neck, between her shoulder blades, lower back, and pain in her arms or legs due to a pinched nerve.  (R56).  Plaintiff stated that the arm pain affected her

ability to perform her job because the pain would be in her right arm and she is

right-handed, and she could not sit for too long because of the pain in her mid-back

area.  (R56-57).  Her physical therapy and frequent doctor's visits were for back

treatment.  (R57).  Plaintiff testified that she was treated by Dr. Lee for pain

management and physical therapy.  (Id.).  Dr. Lee gave her epidural injections

three times a year:  two in the neck and one in the lumbar area of the back.  (Id.).

He also prescribed Norco, Robaxin, and Cymbalta.  (Id.).

Plaintiff testified that she can stand for twenty (20) minutes before needing

to sit, that she is able to sit for forty five (45) minutes before needing to stand

again, and that she can walk about a block before needing to take a ten (10) to

fifteen (15) minute break.  (R63).  She testified that she can lift seven (7) or eight

(8) pounds and can lift more with her right hand than with her left due to the brace,

but that she cannot lift repetitively.  (R63-64).  She can reach overhead, but has

difficulty bending and difficulty picking a quarter off the table.  (R64).

Plaintiff also testified that she is seeing pulmonologist Dr. Case to treat her

COPD, which she has had for the previous seven (7) years.  (R59, 60).  With

COPD, Plaintiff experiences shortness of breath that causes coughing and

bronchitis.  (R59).  She testified that this condition affects her ability to exert

herself physically, such that she cannot walk long distances without having to stop

11

to catch her breath, and cannot mop the floor.  (R60).  Plaintiff also testified that the pain affects her breathing.  (Id.).  She testified that Dr. Case prescribed Advair, an albuterol inhaler, and nose spray to treat her COPD, however, her shortness of breath symptoms are not getting better, although the Advair helps.  (Id.).

Plaintiff testified that she smokes cigarettes, and is aware that it is bad for her health and has been advised to quit.  (R53).  Plaintiff testified that she tried to quit, but every member of the house smokes, except the baby, which makes it hard to quit.  (Id.).  Upon questioning by the ALJ, Plaintiff testified that her doctors have told her that smoking, either by her or the members of her household, might have an impact on her pulmonary problems.  (R59-60).  She stated that she would quit for about six (6) months before she would start smoking again.  (R53).  During her periods of cessation, she would cough less, but the shortness of breath did not go away.  (R61).

Plaintiff wore a brace on her left wrist at the hearing and testified that x-rays did not find anything, and she was told that it looked like a sprain.  (Id).  She also testified that she has been diagnosed with trigger finger in her right hand in which the middle finger would get stuck, causing pain to the other fingers, and that she would have to straighten it with her other hand.  (R62).  This condition makes it difficult for her to write and very difficult to use a computer mouse.  (Id.).  Plaintiff

has had this problem for about two months.  (R61).  She testified that her doctor

has recommended surgery, but it has not yet been scheduled.  (R62).

Plaintiff testified that she had surgery in 2009, in which half her colon was

removed due to the presence of cancerous cells.  (R65-66).  She was tested a year

later with no signs of cancer.  (R66).  Since the surgery, Plaintiff has had

occasional issues with incontinence.  (Id.).  She testified that this happens a couple

times a week, but as long as she takes all of her medications, she does fairly well.

(Id.).  She had these issues while she was working and had to keep extra clothes at

work.  (Id.).

Plaintiff testified that she does not use a cell phone, but that she has a

computer in her house and knows how to use it.  (R54).  She has health care

coverage through her husband and had not been in mental health counseling for

twenty (20) years.  (Id.).  She bought a treadmill on doctor's advice, but does not

exercise because she ends up injuring her back or having some other problems.

(R63).

On a typical day, Plaintiff gets up and has coffee and something to eat, and

takes her pills.  (R65).  Once the medications take effect, she feeds her dogs,

watches television, and tries to read.  (Id.).  She does kitchen work in the mornings.

(Id.).  On a bad day, she does not do anything but lay down and watch television;

on a good day, she does more chores around the house, such as the laundry.  (Id.).
She tries to do a load of laundry a week.  (Id.).

The vocational expert ("VE") identified Plaintiff's previous work as a
system programmer and programmer analyst as "skilled and sedentary."  (R67).
The VE testified that a person who could lift and carry ten (10) pounds
occasionally and lesser amounts more frequently and could stand and/or walk at
least two (2) hours in an eight-hour day could perform Plaintiff's past relevant
work.  (R69).  The VE opined that Plaintiff's past employment afforded some
latitude between sitting and standing because they are profession positions, but
added that the positions essentially must be sedentary.  (R69-70).  Further, the VE
opined that if someone has mild or moderate pain, they should be able to maintain
attention and complete job tasks.  (Id.).  If the person has moderately severe or
severe pain for a great portion of time, the VE opined that the person would not be
able to concentrate and pay attention to tasks.  (Id.).

The VE also testified that if a person had limitations similar to those
assessed by Dr. Lee in the Multiple Impairment Questionnaire, (R808-15), the
person could not do Plaintiff's previous work, because such a person would need
to get up and move around every two (2) hours and take another two (2) hours
before she could sit again, which would remove the person from her work station

14

for at least four (4) hours of the day, and would also be moderately limited in grasping, using fingers for fine manipulations, and using arms for reaching on the right side. (R71). The VE opined, however, that there would be sedentary unskilled work that the person could perform. (Id.).

Plaintiff argued at the hearing that, although Plaintiff's impairments do not quite meet the listing for COPD, her FEV1 values were just barely above the requirements for Listing 1.16. (R72). Thus, the combination of her medication side effects, pain symptoms, documented neck and back issues, and incontinence, would result in a residual functional capacity ("RFC") less than sedentary or even light work. (R73).

     5.    *The ALJ's Findings of Fact*

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since November 4, 2010, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the severe impairments of diabetes, by history and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c)).

. . .

4. The claimant does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5.      The claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

. . .

6.      The claimant is capable of performing past relevant work.  (20 CFR 404.1565).

. . .

7.      The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2010, through the date of this decision (20 CFR 404.1520(f)).

(R25-35).

In addition to the above findings, the ALJ found that Plaintiff has been treated for incontinence, obesity, history of nicotine addiction, depression and anxiety; however, the ALJ found these impairments not to be severe because they do not have more than a minimal impact on Plaintiff's physical functioning considering that Plaintiff has not reported any significant work-related limitations from these conditions and they are controlled with medication.  (R29-30).

In the RFC determination, the ALJ found that Plaintiff was not entirely credible.  (R31).  In analyzing her credibility, the ALJ considered Plaintiff's daily

16

activities and found that Plaintiff has only mild limitations considering that she was not limited to the extent one would expect, given her complaints of disabling symptoms and limitations.  The ALJ found that Plaintiff's reported daily activities were not inconsistent with the RFC.  (R31).

The ALJ also analyzed the medical evidence and found that the objective findings do not provide strong support for Plaintiff's allegations of disabling symptoms and limitations and do not support the existence of limitations greater than the RFC.  (R32).

Regarding precipitating and aggravating factors, the ALJ found that Plaintiff's nicotine abuse has a negative impact on both her respiratory impairments and the above illustrates Plaintiff's blatant noncompliance with doctors' recommendations.  (R33).  The ALJ opined that any respiratory problems are probably exacerbated by the effects of cigarette smoking and that Plaintiff's alleged respiratory symptoms are not as intense, chronic and debilitating as alleged.  (Id.).  The ALJ further noted that Plaintiff's medical treatment has been conservative and routine, and the medical records reveal that the medications have been relatively effective in controlling Plaintiff's symptoms.  (Id.).

The ALJ found inconsistencies in Plaintiff's testimony regarding being terminated.  The ALJ found it odd that Plaintiff received severance pay and

unemployment benefits yet she testified she was terminated for cause for missing work.  (Id.).  The ALJ noted that a person collecting unemployment benefits is required to certify that they are ready, willing and able to work.  (Id.).

With regard to the opinion evidence, the ALJ assigned substantial weight to Dr. Lee's opinion that Plaintiff was capable of working full time, finding that opinion was consistent with the totality of the evidence.  (R33-34).  However, the ALJ assigned partial weight to the remainder of the opinion, finding that Dr. Lee's opinion that Plaintiff was incapable of being at her workstation for four (4) hours per day was "unpersuasive and not dispositive."  (R34).  The ALJ assigned lesser weight to the opinions of the State Agency physicians, finding that additional evidence along with Plaintiff's testimony demonstrated that Plaintiff was slightly more limited than was originally determined.  (Id.).

### 6.     R&R and Objections

Plaintiff argues in her Objections that (1) the ALJ failed to properly weigh the medical evidence, and (2) the ALJ failed to properly evaluate Plaintiff's credibility.  The Magistrate Judge found that substantial evidence supports the weight the ALJ gave to the opinion of the treating physician, Dr. Lee.  (R&R at 27).  The Magistrate found that the ALJ did not err in assigning less weight to Dr. Lee's opinion that Plaintiff is incapable of being at her workstation for four (4)

hours, because inconsistencies in Dr. Lee's opinion rendered that opinion

unpersuasive and not dispositive.  (See id. at 27-28).  The Magistrate also found

that substantial evidence supports the ALJ's credibility determination, and that the

ALJ properly considered multiple factors in finding Plaintiff's allegations to not be

fully credible.  (Id. at 33).

In her Objections, Plaintiff argues that, even if the ALJ did not err by

concluding Plaintiff can perform the sitting requirements of sedentary work, the

ALJ erred in failing to properly weigh several restrictions described by Dr. Lee

that generally preclude sedentary work.  (Obj. at 3).  Plaintiff also argues that the

factors the ALJ considered in finding Plaintiff's allegations not fully credible are

insufficient to support that finding.  (Id. at 5).[2]

## II.   LEGAL STANDARDS

A.   Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject, or modify a magistrate

judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams

v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge

"shall make a de novo determination of those portions of the report or specified

---

[2]   Additional facts will be set forth as necessary below.

proposed findings or recommendations to which objection is made."  28 U.S.C.

§ 636(b)(1).  If no party has objected to the report and recommendation, a court

conducts only a plain error review of the record.  United States v. Slay, 714 F.2d

1093, 1095 (11th Cir. 1983) (per curiam).  Because Plaintiff has objected to the

R&R, the Court conducts its *de novo* review of those portions of the R&R to which

objection is made.  See 28 U.S.C. § 636(b)(1).

> B.   Review of a Decision of the Commissioner of Social Security

A court must "review the Commissioner's decision to determine if it is

supported by substantial evidence and based upon proper legal standards."  Lewis

v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more

than a scintilla and is such relevant evidence as a reasonable person would accept

as adequate to support a conclusion."  Id. at 1440.  "We may not decide the facts

anew, reweigh the evidence, or substitute our judgment for that of the

[Commissioner]."  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## III.   ANALYSIS

An individual is considered to be disabled if she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months[.]"  42

U.S.C. § 423(d)(1)(A).  The impairments must result from anatomical,

psychological, or physiological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques and must be of

such severity that the claimant is not only unable to do her previous work but

cannot, considering age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  See 42 U.S.C.

§§ 423(d)(2)-(3).

"The burden is primarily on the claimant to prove that [s]he is disabled, and

therefore entitled to receive Social Security disability benefits."  Doughty v. Apfel,

245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  To

determine if an applicant suffers a disability under the Social Security Act, an ALJ

performs a five-step evaluation.  See id.; 20 C.F.R. §§ 404.1520, 416.920.  The

five steps are:  (1) the claimant must prove that she is not engaged in substantial

gainful activity; (2) the claimant must prove that she is suffering from a severe

impairment or combination of impairments; (3) the Commissioner will determine

if the claimant has shown that her impairment or combination of impairments

meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 ("Listed Impairment"); (4) if the claimant cannot

prove the existence of a listed impairment, she must prove that her impairment

21

prevents her from performing her past relevant work; (5) the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides her past relevant work.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If, at any step of the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

A.      Weight Given to Medical Evidence

The ALJ assigned partial weight to Dr. Lee's opinion, giving substantial weight to his opinion that Plaintiff is capable of working full time, but finding Dr. Lee's opinion that Plaintiff is incapable of being at her workstation for four (4) hours "unpersuasive and not dispositive."  (R33-34).  Plaintiff argued that the ALJ failed to provide sufficient reasons for rejecting Dr. Lee's opinion regarding Plaintiff's ability to work.  ([8] at 14-16).  The ALJ noted that Dr. Lee opined that Plaintiff could sit for a full eight (8) hours in an eight-hour workday and stand/walk for eight (8) hours in an eight-hour day.  (R33, 810).  The Magistrate Judge noted that Dr. Lee also opined that Plaintiff would have get up and move around every two (2) hours, and would have to wait two (2) hours before sitting again.  (See R810-11).  The Magistrate found these opinions inconsistent, and

22

determined that the ALJ properly rejected Dr. Lee's opinion that Plaintiff had to be away from her workstation four (4) hours per day.  (R&R at 28).

Plaintiff objects to the Magistrate Judge's determination.  She also states that, "even if the ALJ did not err by concluding that [Plaintiff] can perform the sitting requirements of sedentary work, he did not weigh any of the other restrictions described by Dr. Lee that generally preclude sedentary work."  (Obj. at 3).  Dr. Lee opined that Plaintiff had significant limitations using the right upper extremity to perform repetitive reaching, handling, fingering, or lifting because of pain, weakness, and limited functional use caused by disc herniation.  (Id. (citing R811)).  Plaintiff also argues that the ALJ ignored Dr. Lee's finding that she was significantly limited in her ability to use the right upper extremity to grasp, turn, and twist objects, use the fingers/hand for fine manipulations, and use the arm for reaching, including overhead movements.  (Id. (citing R811-12)).  Dr. Lee also opined that Plaintiff's symptoms were constantly severe enough to interfere with her attention and concentration, and that she would need to take unscheduled breaks every three (3) to four (4) hours during an eight-hour workday, lasting five (5) to ten (10) minutes each time.  (Id. (citing R813)).  The VE testified that these types of symptoms would preclude sedentary work even if Plaintiff could sit eight (8) hours a day.  (Id. at 4 (citing R69-70)).  Plaintiff argues that the ALJ's failure to

weigh any of these additional restrictions on which Dr. Lee opined was not harmless error.  (Id. at 3).

An ALJ must give the medical opinions of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Good cause exists when:  (1) the opinion "was not bolstered by the evidence," (2) the "evidence supported a contrary finding," or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241.  The Eleventh Circuit has held that "the ALJ must clearly articulate the grounds for the decision to discredit medical opinion evidence," and it "will not affirm 'simply because some rationale might have supported the ALJ's conclusion.'" Tavarez v. Comm'r of Soc. Sec., ⸺ F. App'x ⸺, ⸺, 2016 WL 75424, at *5 (11th Cir. Jan. 7, 2016) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)).  "In such a situation, to say that the ALJ's decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Winschel, 631 F.3d at 1179.  "When substantial evidence supports the ALJ's articulated reasons for assigning limited weight to a

treating physician's opinion, there is no reversible error." Duval v. Comm'r of

Soc. Sec., —— F. App'x ——, ——, 2015 WL 9466876, at *6 (11th Cir. Dec. 29,

2015).

> Here, the ALJ stated:
>
> . . . Yong Lee, M.D. completed a Multiple Impairment Questionnaire on March 10, 2011.  He opined that the claimant could sit, stand and walk for eight hours in an eight-hour day.  He further opined that the claimant could frequently lift and carry up to five pounds and occasionally lift and carry up to ten pounds.  He indicated that the claimant could perform a full-time competitive job that requires activity on a sustained basis.  Dr. Lee also opined that the claimant could need to take unscheduled breaks to rest at unpredictable intervals during an eight-hour day. (Exhibit 10F).  The undersigned accords substantial weight to the opinion of Dr. Lee that the claimant is capable of working full-time.  Dr. Lee's opinion is consistent with the totality of the evidence (Exhibits 2F, 6F, 7F, 12F, 13 F, 15F, 16F, 20F, 23F, 25F).  However, Dr. Lee's opinion that the claimant is incapable of being at her workstation four hours per day is rendered unpersuasive and not dispositive.  Therefore, the undersigned accorded partial weight to Dr. Lee's opinion.

(R33-34).  On *de novo* review, the Court finds that the ALJ's conclusory statement

that "Dr. Lee's opinion that the claimant is incapable of being at her workstation

four hours per day is rendered unpersuasive and not dispositive" fails to "clearly

articulate the grounds for the decision to discredit medical opinion evidence."

Tavarez, 2016 WL 75424, at *5.  It is unclear to the Court what, precisely, led the

ALJ to determine that Dr. Lee's opinion was unpersuasive and not dispositive.

There are several possibilities:  Dr. Lee's opinion may be not be bolstered by the

evidence; the evidence may support a contrary finding;[3] or the opinion may, as the Commissioner contends, be inconsistent with Dr. Lee's own medical records, (see [9] at 7-8). But the Commissioner's ability to argue—or the Court's ability to find—that "some rationale might have supported the ALJ's conclusion" is not the proper inquiry. Winschel, 631 F.3d at 1179. The ALJ was required to clearly articulate his reasons, and he failed to do so with his vague statement that Dr. Lee's opinion is "unpersuasive and not dispositive."

The Court also finds persuasive Plaintiff's argument that the ALJ failed to address several of Dr. Lee's medical opinions. Dr. Lee opined that Plaintiff had significant limitations using the right upper extremity to perform repetitive reaching, handling, fingering, or lifting because of pain, weakness, and limited functional use caused by disc herniation. He found Plaintiff was significantly limited in her ability to use the right upper extremity to grasp, turn, and twist objects, use the fingers/hand for fine manipulations, and use the arm for reaching, including overhead movements. Dr. Lee opined that Plaintiff's symptoms were

---

[3]     The ALJ's statement that Dr. Lee's opinion on Plaintiff's ability to sit is unpersuasive immediately follows his statement that Dr. Lee's opinion on Plaintiff's ability to work full time is "consistent with the totality of the evidence." (R34). This may suggest the ALJ implied that Dr. Lee's opinion on Plaintiff's ability to sit is unpersuasive because, unlike Dr. Lee's other opinion, it is not consistent with other evidence. It is simply unclear, however, what the ALJ's actual reasons were.

constantly severe enough to interfere with her attention and concentration, and that she would need to take unscheduled breaks every three (3) to four (4) hours during an eight-hour workday, lasting five (5) to ten (10) minutes each time. The ALJ's failure to address these findings is particularly important because the VE testified that these types of symptoms would preclude sedentary work even if Plaintiff could sit eight (8) hours a day.

The Court understands that Plaintiff is able to focus in this appeal on matters in the R&R that provide the prospect for a more favorable ruling than those offered in the R&R. While the Magistrate Judge thoughtfully and carefully reached his findings and recommendations in the R&R, the few issues not specifically addressed compel the Court to ask the Commissioner to take a further look at Dr. Lee's opinion to see how it might impact the previous decisions reached in this matter.[4] See Winschel, 631 F.3d at 1179 (reversible error where "the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible

---

[4]     In addition, the ALJ's failure to address Dr. Lee's opinions regarding Plaintiff's additional limitations on sedentary work was not harmless error, because these opinions, if accepted as true, could change the ALJ's decision. See Hart v. Astrue, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, at *6-7 (M.D. Fla. Sept. 19, 2011) (holding that Winschel and Wiggins support that it is not harmless error for an ALJ to fail to mention a medical opinion from a treating physician that, if accepted as true, could change the ALJ's decision).

that the ALJ considered and rejected [the opinions], but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence"); Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982) (reversible error because ALJ failed to address treating physician's second report); Robin v. Massanari, 176 F. Supp. 2d 1278, 1281 (S.D. Ala. 2001) (ALJ committed reversible error by failing to address treating physician's notes and RFC opinion).

Remand here is required for the ALJ to consider all of Dr. Lee's opinions. Specifically, the ALJ must articulate the weight afforded to Dr. Lee's opinions, including his opinions regarding Plaintiff's limitations to her right upper extremity, and he must clearly articulate the grounds for any decision to discredit Dr. Lee's medical opinion evidence.

### B.    Plaintiff's Credibility

Plaintiff argues that the ALJ's credibility assessment was insufficient.  ([8] at 19).  On remand, the ALJ will re-evaluate Dr. Lee's medical opinions, and this re-evaluation may result in a different RFC assessment or modified findings regarding Plaintiff's credibility.  The Court thus finds that it is premature to consider here the issue of Plaintiff's credibility.  See Hadley v. Colvin, No. 8:14-cv-40-T-33AEP, 2015 WL 451072, at *5 (M.D. Fla. Feb. 3, 2015).

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Jacquelyn Thomas Lungstrum's

Objections [12] to Magistrate Judge Alan J. Baverman's Final Report and

Recommendation [10] are **SUSTAINED**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the

Commissioner for further consideration consistent with this Opinion and Order.


**SO ORDERED** this 8th day of February, 2016.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE